FISK *et als.* v. FOWLER *et al.*

Plaintiffs purchased of defendant F. the bark "Chase," paid a portion of the purchase-money, and entered into possession; at the time of sale, the vessel was sailing under a coasting-license issued to F., but was registered in the name of a third person. F. agreed to deliver to plaintiffs, within twenty days, a good and sufficient title and register of the bark, and as security, for the performance of this agreement, executed a bond in the penal sum of $2000. F. failed to deliver the title and register at the time agreed on, or at any time, by reason of which failure the plaintiff was restricted in the lawful and usual use and employment of the vessel: *Held,* that the sum specified in the bond should be considered as liquidated damages.

APPEAL from the District Court of the Twelfth Judicial District, County of San Francisco.

This was an action on a bond given by defendants to plaintiffs to secure the delivery of the title-papers and register of a vessel.

Plaintiff purchased of Fowler the bark "Chase," paid a portion of the purchase-money, and entered into possession.

At the time of sale, the vessel was sailing under a coasting-license issued to Fowler, but was registered in the name of a third person.

Fisk v. Fowler.

Defendant agreed to deliver to plaintiffs, within twenty days, a good and sufficient title and register of the bark, and as security for the performance of this agreement, executed and delivered to plaintiffs the following obligation:

"Know all men, by these presents,·that we, Jas. L. Fowler and D. Brigham, Jr., of San Francisco, California, are held and stand firmly bound unto Jas. H. Fisk, Jas. M. Olmstead, and Joseph Nason, of San Francisco, California, in the full and just sum of two thousand dollars, ($2000,) lawful money of the United States of America, to be paid to the said Jas. H. Fisk, Jas. M. Olmstead, and Joseph Nason, their legal representatives and assigns, for which payment, well and truly to be made, we bind ourselves, our heirs, executors, and administrators, forever.

"Sealed with our seals, dated the 10th day of April, 1856, at San Francisco, California.

" *Whereas*, Jas. H. Fisk, Jas. M. Olmstead, and Joseph Nason, have purchased of Jas. L. Fowler the bark 'Chase,' for the sum of four thousand four hundred dollars—one thousand dollars being paid in cash, twelve hundred dollars to be paid in ten days from the date hereof, and twenty-two hundred dollars to be paid in three months from the date hereof, with interest at the rate of two per cent. per month;

"And the condition of the above obligation is such that the bounden Jas. L. Fowler and D. Brigham, Jr., shall, within twenty days from the date hereof, and before the payment of the sum of twenty-two hundred dollars last mentioned, deliver, or cause to be delivered, to the above mentioned Jas. H. Fisk, Jas. M. Olmstead, and Joseph Nason, a good and sufficient title and register to the said bark 'Chase,' then this obligation to be null and void, otherwise to remain in full force and virtue.

"Jas. L. Fowler,    [seal.]
"D. Brigham, Jr.    [seal.]

"Signed, sealed, and delivered in presence of Algernon Smith, Thomas S. King."

Defendant failed to deliver the title and register at the time agreed on, or at any time, by reason of which failure the plaintiff was restricted in the lawful and usual use and employment of the vessel.

The Court below rendered judgment for plaintiff in the amount of the penalty of the bond, and defendants appealed.

*Robert Rankin* for Appellants.

1. The delivery of the vessel to plaintiffs vested the title without a bill of sale.

2. Plaintiffs can not set up title in a stranger, while retaining undisturbed possession, nor can they claim damages till evicted.

33

3. The sum named in the bond is a penalty, and not liquidated damages. Only the actual damages can be recovered.

4. In case of eviction, plaintiffs might recover damages on the bond, construed as a covenant of warranty, beyond the sum therein specified.

5. The bond held by plaintiffs is a mere security against damages actually sustained—in other words, a bond of indemnity against adverse claimants, according to the agreement at the time of sale.

6. The bond was given for two distinct objects, viz., a good title, and a register. The want of register alone would not invalidate a good title. The title could be conveyed only by delivery or by bill of sale.

"Notwithstanding established usage in the Maritime Courts—and the most eminent authority concur in requiring a bill of sale to evidence title to a ship—it will be found that the Courts of Common Law, in this country, whenever the question has arisen directly or (indirectly) collaterally, have recognized the legality and binding effect of a parol transfer. And we can not but think that they proceed on the correct principle." Flander's Maritime Law, § 115, (1852;) 3 Kent, 130.

"Property in a vessel passes by delivery only, without a bill of sale." Wendover v. Hogeboom, 7 Johns., 308.

"The rule of law, that possession of personal property is *prima facie* evidence of ownership, is uniform in its application. The question of the ownership of a vessel forms no exception to the rule." Bailey v. New World, 2 Cal., 370.

"Where a person sells goods in good faith, to which he has no title, the vendee can not maintain an action against him so long as he remains undisturbed in the possession." 5 U. S. Digest, p. 713, § 58.

"One in possession of land, under a contract to purchase, may sell the wood, etc., and the buyer can not avoid the sale by showing him not to be the owner." Ib., § 70.

"In regard to all these covenants, (viz., the usual personal covenants in a deed,) the rule is general that no substantial relief will be given till the party complaining has actually suffered injury. It is not sufficient that he is menaced by an outstanding title or incumbrance.

"The covenantee can not have anything more than nominal damages until he has been damnified in consequence of a breach of the covenant.

"In this country, the rule of damages in regard to eviction is generally presented under the covenant for quiet enjoyment or of warranty, and, in these cases, it is well established that the mere existence of a paramount legal title is not sufficient, but that plaintiff must allege and prove an ouster or eviction by a paramount title." Sedgwick on Damages, 152–7.

"It has been held, by all sound decisions, that an action upon the covenant of warranty would not lie until eviction.

"The reason of this principle is founded upon the position that there can be no approximation to a correct measure of damages." Norton v. Jackson, 5 Cal., 60.

"The policy of the law does not regard penalties or forfeitures with favor, and equity relieves against them. And, therefore, because by treating the sum as a mere penalty, the case is open to relief in equity according to the actual damages, the sum will generally be so considered, and the burden of proof will be on him who claims it as liquidated damages, to show that it was intended as such by the parties." 2 Greenl. Ev., § 257.

"Our Courts will be generally found to be inclined to treat a fixed sum as a penalty, and to hold that the real damages are to be inquired into." Sedgwick on Damages, 397–8, 412.

In debt on bond, if the damages actually sustained be greater than the penalty and interest, the only remedy is by an action of covenant, which may be maintained where the condition discloses an agreement to perform any specific act; in which case, if it be other than the payment of money, the jury may ordinarily award the damages actually sustained, without regard to the amount of the penalty. 2 Greenl. Ev., § 263; Sedgwick on Dam., pp. 425–6, and notes.

*George F. and Wm. H. Sharp* for Respondents.

I. The sum stated in the bond sued on, must be taken as liquidated damages.

Whether damages were liquidated or not, was formerly left to much uncertainty, arising from an endeavor on the part of Courts to make better contracts than the parties themselves, notwithstanding the parties are the best judges, and can appreciate the consequences best.

That action of Courts was wrong upon principle. The office of Courts is to carry out the intention of parties, provided that those intentions are not contrary to law. They have no authority to put a different construction upon the clause relating to damages, than upon any other clause.

Courts have made an endeavor, of late, to get back to the true rule; and in considering the question whether the amount stated in a bond is a penalty, or as liquidated damages, they will look at three things:

*First*—At the language employed.

*Second*—The subject-matter.

*Third*—The intention of the parties themselves.

The last two are looked upon as the controlling guides. As to the language employed in the bond in question, the appellants say: "If they do not give a good and sufficient title and register in three months, they will pay the plaintiffs the sum of $2000."

They failed to do it, and they have no right now to say that the plaintiffs have no right to the $2000, especially when there is nothing illegal in allowing the parties to fix the damages, and those damages fixed at a sum less than the sum actually paid by plaintiffs.

The Court will notice, also, that the bond is in the alternative, from which fact the intention of the parties is apparent. The obligors agree to do one of two things. They had their election to do either—and having made their election not to perform the act required, there is no hardship in making them pay the sum stipulated to be paid, in case they did not perform. Sedgwick on Dam., 421; Darkin v. Williams, 17 Wend., 447; same case, in error, 22 Wend., 201.

Again, as to the subject-matter : a ship restricted in its employment or use. In a case like this, it would be impossible to give such evidence as would enable the Court to do complete justice : the claim for damages depending not only upon things done, but also upon things to be done, which is impossible to prove—like the value of a man's customers.

The policy of all commercial nations is, that a ship shall be kept employed—not to rot at the dock, nor its employment be in any way restricted. For the want of a registry, a ship loses the privileges and benefits of ships of the United States; can not make a foreign voyage; subject to extra tonnage duties, etc. Abbott on Shipping, 72, 77, (Story's ed.)

There is no rule to ascertain the profits of a prospective voyage, hence, it would be vain to attempt to get at the actual damages; therefore, the Court did right in inclining to give the relief which parties had agreed upon, and which was evidently their intention to liquidate at the sum stated.

There can be no better guide than the estimation of the parties themselves, who are acquainted with all the facts, and who anxiously guard their respective rights.

In a case like this, the sum stated is very much like the sum fixed in a charter-party for demurrage, and it has never been questioned in that case that the sum is liquidated.

The authorities fully sustain this proposition. Cases cited above; also, Sedgwick on Damages, 401, 404, 408–11; Green's Ex'r v. Price, 13 Mees. & Wels., 695; Rawlinson v. Clarke, 14 Ib., 187; Smedbery v. More, 24 Wend., 244; Cal. Steam Nav. Co. v. Wright, 6 Cal., 258.

II. As to the minor points :

Evidence of defendants themselves shows a demand, so that if a want of a demand was cause for a nonsuit, it is waived. The evidence shows, also, that the appellants could at no time have complied.

The paper purporting to be a bill of sale, was not tendered until six months after giving the bond—which was refused, be-

cause the persons making the same had no title.   The person in whose name the vessel was registered, is the only one who can give a bill of sale—that person was one Barton Ricketson.

No officer can dispense with the production of the bill of sale, in any case, for the purpose of getting a new register.   Abbott on Shipping, 95, (S. and P.'s ed.)

The appellants lay great stress on the fact, that, according to the decisions of some Courts, a vessel can be transferred by parol.   A sufficient answer to all this is, that the parties had agreed upon a higher order of transfer, and that must be the form of transfer in this case.

TERRY, C. J., after stating the facts, delivered the opinion of the Court—BALDWIN, J., concurring.

There is no error in the judgment.

This is one of those cases in which it is difficult, if not impracticable, to estimate the exact amount of damage suffered by the failure of the defendant to comply with his contract, and we think the amount of the bond should be considered as liquidated damages, within the rule laid down by this Court in Steam Navigation Company v. Wright, (6 Cal., 258.)

Judgment affirmed.